**Alejandro AVILA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 14–97–01267–CR, 14–97–01269–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 17, 2000.

Troy Scott Locklear, Houston, for appellants.

Rikke Burke Graber, Houston, for appellees.

Panel consists of Chief Justice MURPHY, Justices ANDERSON and HUDSON.

### SUBSTITUTED OPINION

JOHN S. ANDERSON, Justice.

Appellant Alejandro Avila (Avila) was convicted by a jury of delivery of cocaine weighing at least 400 grams, and of possession of cocaine weighing at least 400 grams with intent to deliver. Following his conviction, Avila was sentenced by the court to confinement for 15 years in the Texas Department of Criminal Justice, Institutional Division. Avila appeals his conviction, asserting in five points of error the evidence is legally and factually insufficient to sustain his conviction, and the trial court erred when it submitted post-arrest photographs of the defendant handcuffed, a jury charge on the law of parties, and an instruction that the jury was to consider the "guilt or innocence" of the defendant. We affirm.

### I.

### Factual Background

The record demonstrates that on March 28, 1996, Officer Darren Bush (Bush) purchased approximately one kilo of cocaine from three men: Marco Gonzales (Gonzales), Alejandro Avila, and Baldeo Narinesing (Narinesing). On March 26, 1996, two days before the narcotics transaction took place, Bush received information from a paid confidential informant that he knew of an individual who was willing to sell a large quantity of cocaine to anyone who had the money.

The next day, the informant introduced Bush to Narinesing, who agreed to sell Bush two kilos of cocaine for $40,000. They agreed the sale would take place at the tire store where Narinesing worked, and Narinesing would page Bush when he reached his supplier. Narinesing paged Bush several times; however, Bush did not return his pages because he needed time to assemble his arrest team.

The following day, March 28, 1996, Bush completed his preparations and went to the tire shop. Narinesing met him, and because he was angry at Bush for not returning his pages, he arranged for his supplier to bring only one kilo of cocaine. After Narinesing viewed the money in Bush's trunk, he went to Avila and spoke with him, although Bush could not hear what was said. Avila then went to a payphone outside the tire store and called someone. Twenty seconds after Avila

hung up, the phone rang, he answered it and spoke to someone again.

Approximately twenty minutes later Gonzales pulled into the parking lot, got out of his car holding a white box, and he, Avila, and Narinesing went into a garage bay. A short time later, they asked Bush to come with them into the garage bay, but he declined, telling them he did not want to leave his money unattended. The three men exited the garage bay and accompanied Bush to his vehicle. Narinesing walked past the car on the driver side, acting as a lookout, while Gonzales followed Narinesing, still carrying the white box. Bush and Avila, however, walked along the passenger side of the car. Avila turned to Bush and asked him if he had the money. Bush stated he wanted to weigh the cocaine first. In response, Avila looked at Gonzales, pointed to the box Gonzales was holding, and pointed to the scales on the front seat of Bush's vehicle. Following this instruction, Gonzales reached inside the driver's window, placed the box on the front seat, took the kilo of cocaine out of the box, and placed it on the scale. While weighing the cocaine, Gonzales cut a hole in the top of the wrapping, and Bush could see a white powder substance inside. Bush then gave the arrest signal, and Avila, Narinesing, and Gonzales were arrested.

## II.

### Impeachment Evidence

■ As a threshold matter we will address Avila's challenge to Bush's testimony based on a statement Bush made during an *in camera* hearing held to determine whether to disclose the identity of the confidential informant.[1] His challenge arises in connection with his sufficiency attack on the evidence. Bush stated during the *in camera* hearing that he called Narinesing back the morning of the narcotics transaction; however, at trial, Bush testified he never returned any of Narinesing's pages.

Under his factual sufficiency challenge, Avila asserts the remedy for a finding of factual insufficiency is a new trial, and if he is accorded a new trial he will put Bush's inconsistencies to the test of cross-examination. Further, under his legal sufficiency challenge, Avila only notes that the jury did not have before it the conflicting testimony from Bush's *in camera* testimony.

Thus, Avila has not brought an issue on direct appeal concerning this newly discovered evidence. Further, the record before us does not contain a motion to abate the appeal and remand to the trial court so that he may file an out of time motion for new trial based on this newly discovered evidence. *See Tuffiash v. State*, 878 S.W.2d 197, 198 (Tex.App.—San Antonio 1994, pet. ref'd) (granting appellant's motion to abate appeal and remand to trial court for filing out of time motion for new trial based on newly discovered evidence where appellant demonstrated State's witness had committed perjury). Accordingly, because Avila has not specifically sought any relief from this Court regarding the conflict in Bush's testimony, this issue has not been raised and it need not be addressed in our disposition of this appeal. *See* Tex.R.App. P. 47.1.

### III.

### Legal Sufficiency

Appellant challenges both the legal and factual sufficiency of the evidence in this appeal. Appellant does not, but we will address the legal sufficiency challenge first

---

1. Under Texas evidence rule 508 a trial court is required to conduct an *in camera* hearing if it appears from the evidence that an informer may be able to give testimony on guilt or innocence in a criminal case. Evidence submitted to the court at this hearing is to be sealed to protect the identity of the confidential informant. *See* Tex.R. Evid. 508(c)(2). The attorney for appellant gained access to the *in camera* record through an error in the District Clerk's office.

because the factual sufficiency review begins with the assumption that the evidence is legally sufficient under the test set out in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560(1979). *See Santellan v. State*, 939 S.W.2d 155, 164 (Tex.Crim.App.1997).

In his second point of error, Avila asserts the evidence is not legally sufficient to support his convictions. In reviewing legal sufficiency, we view the evidence in the light most favorable to the verdict, and ask whether any rational trier of fact could have found beyond a reasonable doubt all of the elements of the offense. *See Jackson*, 443 U.S. at 309, 99 S.Ct. 2781; *see also Santellan*, 939 S.W.2d at 160.

■ The elements of the offense of delivery of a controlled substance are (1) a person, (2) knowingly or intentionally, (3) delivers, (4) a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (Vernon Supp.2000); *see also Cornejo v. State*, 871 S.W.2d 752 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (citing *Stewart v. State*, 718 S.W.2d 286, 288 (Tex.Crim.App.1986)). Additionally, to prove unlawful possession of a controlled substance, the State must show that appellant exercised care, control, and management over the contraband; and that appellant knew that what he possessed was contraband. *See Abdel–Sater v. State*, 852 S.W.2d 671, 675 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd).

■ In a delivery or possession with intent to deliver case, intent to deliver may be proved by circumstantial evidence. *See Moss v. State*, 850 S.W.2d 788, 797 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd). Further, intent is a question of fact to be determined by the trier of fact based upon circumstantial evidence adduced at trial. *See Puente v. State*, 888 S.W.2d 521, 527 (Tex.App.—San Antonio 1994, no pet.). Intent can be inferred from the acts, words, or conduct of the accused. *See id.* Finally, the control over the contraband need not be exclusive, but can be jointly exercised by more than one person. *See McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App.1985).

■ When the accused is not in exclusive possession of the place where the contraband was found, it can not be concluded that appellant had knowledge of or control over the contraband unless there are additional independent facts and circumstances that affirmatively link appellant to the contraband. *See Cude v. State*, 716 S.W.2d 46, 47 (Tex.Crim.App.1986). The facts and circumstances must create a reasonable inference that appellant knew of the controlled substance's existence and exercised control over it. *See Dickey v. State*, 693 S.W.2d 386, 389 (Tex.Crim.App. 1984). An independent fact, indicating appellant's knowledge and control of the contraband, exists if the contraband was in close proximity to appellant and readily accessible to him. *See Abdel–Sater*, 852 S.W.2d at 676. Also, an independent fact exists if the amount of contraband found is large enough to indicate that appellant knew of its presence. *See Hill v. State*, 755 S.W.2d 197, 201 ( Tex.App.—Houston [14th Dist.] 1988, pet. ref'd).

■ Here, the following evidence was adduced at trial through the testimony of Bush and his partner, Officer Comeaux:(1) Avila spoke with Narinesing after he viewed the money in Bush's trunk; (2) Avila then used a nearby payphone to call someone, hung up' the phone and then immediately received another call; (3) approximately fifteen to twenty minutes later, Gonzales arrived with a kilo of cocaine; (4) the three men conversed together, then proceeded to Bush's car, where Avila asked Bush if he had the money; (5) when Bush responded he wanted to see the cocaine, Avila signaled Gonzales to weigh the cocaine, as requested by Bush, and Gonzales complied; (6) when the cocaine was placed on the scales, Gonzales cut the package so that the cocaine was visible. As described, Avila's actions were sufficient to create a reasonable inference that Avila knew of the cocaine's existence and

exercised control over it. *See Abdel–Sater*, 852 S.W.2d at 675.

Viewing this evidence in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt that Avila knowingly or intentionally delivered cocaine to Officer Bush and that he possessed the cocaine with the intent to deliver it to Bush. *See Santellan*, 939 S.W.2d at 160. Therefore, the evidence of Avila's knowledge of, intent to deliver, and control over the cocaine is legally sufficient to support his conviction. We overrule his second point of error.

## IV.

### Factual Sufficiency

◼ In his first point of error, Avila challenges the factual sufficiency of the evidence underlying his convictions. In reviewing a factual sufficiency challenge, the court of appeals "views all the evidence without the prism of 'in the light most favorable to the prosecution' and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim. App.1996). Avila asserts the evidence is factually insufficient to support his convictions because it was adduced at trial primarily through the testimony of Officer Bush. This characterization of the strength of the prosecution's case is misleading. The State produced Officer Bush to testify as to the conversations and events leading to Avila's arrest. The State also produced Officer Comeaux, who corroborated Officer Bush's testimony to the extent that he was able to observe Avila talking with Narinesing, using the telephone, and walking with Officer Bush to the undercover vehicle. The defense offered no evidence to contradict the testimony of the State's witnesses. Therefore, we cannot say the verdict was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id.* Accordingly, we overrule Avila's first point of error.

## V.

### Post–Arrest Photographs

◼ Avila's third point of error on appeal concerns the three post-arrest photographs of Avila and two co-defendants. In these pictures, Avila claims it is apparent the three are wearing handcuffs, thus undermining their presumption of innocence and depriving them of a fair trial. Avila concedes, and we agree, the handcuffs are not visible in the photographs, and it appears from the pictures the defendants are standing with their hands behind their backs. Nonetheless, Avila contends "a common sense review clearly shows all three defendants were in custody and subject to physical restraints." We disagree.

◼ Requiring a defendant to wear handcuffs before the jury at trial infringes his constitutional presumption of innocence. *See Marquez v. State*, 725 S.W.2d 217, 230 (Tex.Crim.App.1987). Although Avila was not handcuffed in front of the jury, he contends the photographs of the crime scene allow the jury to see him restrained. The scene of the crime may properly be shown to the jury as evidence, but the State must also observe the rule that the defendant be brought to the jury "unfettered." *See Lucas v. State*, 791 S.W.2d 35, 38 (Tex.Crim.App.1989).

◼ The record demonstrates the defendants were in custody when the photographs were taken, and therefore, we agree they would have been subject to physical restraints. However, merely being subject to physical restraint is not the same as appearing in front of the jury restrained. *Cf. Dennis v. State*, 925 S.W.2d 32 (Tex.App.—Tyler 1995, pet. ref'd) (noting videotape of police officer placing handcuffs on defendant allowed jury to see him restrained). Here, the jury did not see the handcuffs on the defendant. In fact, the first mention of the defendant's restraints was made by the defense counsel asking Bush if Avila was wearing handcuffs in the photograph.

Bush responded he did not know. Therefore, we hold the State did not violate the rule requiring that a defendant appear before the jury unfettered. *See Lucas*, 791 S.W.2d at 38. Accordingly, Avila's third point of error is overruled.

## VI.

### Law of Parties Charge

■ In his fourth point of error, Avila complains the trial court erred in submitting a charge to the jury on the law of parties. He argues the trial court erred because the only evidence supporting this charge was Officer Bush's testimony. In assessing the sufficiency of the evidence to convict a party of an offense, the evidence must directly or circumstantially show that the appellant acted with intent to promote or assist in the commission of the offense by soliciting, encouraging, directing, aiding, or attempting to aid another person in the commission of the delivery. *See* Tex. Pen.Code Ann. § 7.02(a)(2) (Vernon 1994); *see also Dade v. State*, 848 S.W.2d 830, 832 (Tex App.—Houston [14 th Dist.] 1993, no pet.).

■ If during the course of the trial, evidence is produced which would warrant a charge on the law of parties, the trial court may charge the jury on the issue, even in the absence of an allegation in the indictment charging the accused as a party. *See Meanes v. State*, 668 S.W.2d 366 (Tex.Crim.App.1983); *see also Puente v. State*, 888 S.W.2d 521, 529 (Tex.App.—San Antonio 1994, no pet.). In determining whether a parties charge is proper, i.e., supported by the evidence, the trial court can look to events occurring before, during and after the commission of the offense. *See Medellin v. State*, 617 S.W.2d 229 (Tex.Crim.App.1981). The court can look to the actions of the accused which reflect an understanding and common design to do the prohibited act. *See Beier v. State*, 687 S.W.2d 2 (Tex.Crim.App.1985); *see also Puente*, 888 S.W.2d at 529. The defendant's presence at the scene of the of-

fense is a fact which can be taken into account in ascertaining whether a charge on the law of parties is warranted. *See Keller v. State*, 606 S.W.2d 931 (Tex.Crim. App.1980). The agreement of the individuals to act as parties can be proven circumstantially. *See Morrison v. State*, 608 S.W.2d 233 (Tex.Crim.App.1980); *see also Dade*, 848 S.W.2d at 832 (holding participation in an enterprise may be inferred from the circumstances and need not be shown by direct evidence).

The evidence in this case warrants a parties charge. According to the record, Avila made a phone call which precipitated the arrival of the cocaine. Once the cocaine arrived, he asked the undercover officer if he had the money, and then directed Gonzales to weigh the cocaine on the scale in Bush's car. This constitutes sufficient evidence of Avila's involvement in the transaction. *See Cornejo*, 871 S.W.2d 752, 755–56 (holding appellant's participation in phone calls and asking officer if he had the money was sufficient evidence of involvement in narcotics transaction). Therefore, the trial court did not err by submitting a parties charge to the jury. Accordingly, we overrule Avila's fourth point of error.

## VII.

### Jury Instruction

■ In point of error five, appellant contends the trial court erred when it shifted the burden of proof to appellant by instructing the jury to restrict its deliberations to the guilt or innocence of appellant, the defendant below. The exact sentence in the court's charge during the guilt/innocence stage to which appellant objects states the following: "Your sole duty at this time is to determine the guilt or innocence of the defendant under the indictment in this cause and restrict your deliberations solely to the issue of guilt or innocence of the defendant."

The core of appellant's argument here is that the foregoing instruction placed the

burden on appellant to prove his innocence. Appellant contends that the burden of proof was improperly shifted because a finding of not guilty is not the same as an actual affirmative showing of innocence. Appellant concludes that the jury could not be impartial because appellant had a heightened responsibility to affirmatively prove his innocence under the charge given.

Appellant's argument here is in conflict with the actual wording of the charge and Texas statutory and case law. First, the charge given to the jury in the guilt/innocence stage, which contains the sentence objected to by appellant, also contains the following instructions: *"The law does not require a defendant to prove his innocence or produce any evidence at all.* The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case. The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant."(emphasis added) The charge to the jury stated in plain language that every juror could understand that the defendant had no burden of proof whatsoever. It also told the jury that the defendant was presumed to be innocent. Moreover, the jury was not misled or confused by an instruction that restricted their deliberations to guilt or innocence because it was notice that they were

not to consider, at the first stage of a bifurcated trial, the issue of punishment.

■■■ Second, article 37.07, § 2(a) of the Texas Code of Criminal Procedure provides that "[i]n all criminal cases, . . . tried before a jury on a plea of not guilty, the judge shall, before argument begins, first submit to the jury the issue of guilt or innocence of the defendant of the offenses charged, without authorizing the jury to pass upon the punishment to be imposed." TEX.CODE CRIM. PROC. ANN. Art. 37.07, § 2(a) (Vernon Supp.2000). Thus, this statute requires the trial court to submit the issue of guilt or innocence to the jury prior to the punishment stage, and we hold that the language in the charge about which the appellant now complains merely tracks the requirement of article 37.07, § 2(a).[2]

Third, this Court has considered the exact same language in a jury charge at the guilt/innocence stage of trial and held that it was not error to submit such a charge. *See Barnes v. State*, 855 S.W.2d 173, 175 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd). The *Barnes* court noted, in reaching its holding, that the instruction was simply informing the jury, in accordance with article 37.07, to consider only the guilt or innocence of the defendant and not the issue of punishment. *Id.* Because *Barnes* is precedent from this Court, we are constrained to follow it.[3]

Accordingly, we hold that it was not error for the trial court to submit a charge to the jury instructing them to restrict their deliberations to the guilt or innocence of the defendant. In addition, we

---

**2.** Appellant appears to challenge the constitutionality of article 37.07. § 2(a) in a footnote to his argument. However, because he failed to provide authority supporting his contention, the argument is inadequately briefed and we are not required to address it on appeal. *See Sanders v. State*, 963 S.W.2d 184, 191 (Tex.App.—Corpus Christi 1998, pet. ref'd); *see also* TEX.R.APP. P. 38.1(h).

**3.** Another intermediate court of appeals has acknowledged the validity of, and applied, the analysis in *Barnes* to a challenge that such a

paragraph in the charge changed the burden of proof. *See Flores v. State*, 920 S.W.2d 347, 357 (Tex.App.—San Antonio 1996), *pet. dism'd, improvidently granted,* 940 S.W.2d 660 (Tex.Crim.App.1996). The *Flores* court concluded that virtually the same instruction at issue here did not change the burden of proof for the State because, under the wording of the entire charge, the appellant was still presumed innocent and the State was still required to prove the guilt of the defendant. *Id.*

hold that, as demonstrated by an examination of the entire charge which instructs the jury that the defendant did not have to prove his innocence, the burden of proof for the State was not changed by the challenged language in the charge, and no burden was placed on appellant to prove his innocence. *See Flores*, 920 S.W.2d at 357. Appellant's point of error five is overruled.

We affirm the judgment of the trial court.